IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

## STATE OF TENNESSEE v. JOHN H. CHILDRESS

**Direct Appeal from the Criminal Court for Davidson County**
**No. 99-T-30    Frank G. Clement, Judge**

---

### No. M1999-00843-CCA-R3-CD  - Decided July 7, 2000

---

The Defendant was found guilty by a Davidson County jury of driving with a blood alcohol concentration of .10 percent or more (D.U.I. per se) and driving on a revoked license. In this appeal as of right, he argues that the trial court erred by admitting the results of his breathalyzer test because the admission of this evidence in a D.U.I per se case violates a defendant's confrontation rights. We hold that the trial court did not err by admitting the Defendant's breath test results. Accordingly, we affirm the Defendant's conviction.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Trial Court Affirmed.**

WELLES, J., delivered the opinion of the court, in which SMITH, J., and Williams, J., joined.

Hollis Moore, Assistant Public Defender, Nashville, Tennessee, for the appellant, John H. Childress.

Paul G. Summers, Attorney General and Reporter, David H. Findley, Assistant Attorney General, Victor S. Johnson, District Attorney General, Ed Ryan, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Defendant, John H. Childress, was charged in a three-count indictment with third-offense driving under the influence; driving with a blood alcohol concentration of .10 percent or more (D.U.I. per se); and driving on a revoked, suspended or cancelled license. A Davidson County jury found the Defendant guilty of D.U.I. per se and driving on a revoked license. Because the jury could not reach a verdict as to Count I of the indictment, driving under the influence, the trial court declared a mistrial with regard to that count. For the D.U.I. per se conviction, the trial court sentenced the Defendant to eleven months, twenty-nine days incarceration, suspending all but 150 days of the sentence. The trial court also revoked the Defendant's license for three years, required him to undergo alcohol treatment as deemed appropriate by a professional therapist, and fined him $1,100. For the driving on a revoked license conviction, the trial court sentenced the Defendant to six months, suspending all but thirty days of the sentence. The trial court ordered that the two

sentences be served consecutively, resulting in an effective sentence of 180 days incarceration. The Defendant now appeals from the judgment of the trial court, presenting only one issue on appeal: whether the trial court erred by admitting his breathalyzer test results. We affirm the judgment of the trial court.

The proof presented at trial revealed that on October 30, 1998, Officer Robert Barry of the Nashville Metropolitan Police Department stopped the Defendant on Dickerson Road at approximately 8:20 p.m. Barry testified that he did so because the Defendant was driving without his lights on. When Barry approached the Defendant's car, he detected an odor of alcohol. He also noted that the Defendant's eyes were watery and bloodshot and that his speech was "somewhat slurred." The Defendant could not produce a valid driver's license. He informed Barry that he had drunk one quart of beer and one twenty-four ounce beer. Officer Barry administered two field sobriety tests to the Defendant: the walk-and-turn test and the horizontal gaze test. Barry explained that the walk-and-turn test requires that the subject take nine steps heel-to-toe, turn, and take nine more steps in the opposite direction. Barry testified that the Defendant took eleven steps initially and "missed 7 times"; after he turned, he took nine steps but "missed 5 times." Following the tests, Officer Barry advised the Defendant that he was under arrest, read him his rights, and informed him of the implied consent law. Barry stated that at no time during the arrest process did the Defendant request a blood alcohol test.

Officer Barry summoned Officer Wallace Taylor, also of the Metro Police Department, to conduct a breathalyzer test. Officer Taylor testified at trial that he was certified to perform breath alcohol testing by the Tennessee Bureau of Investigation, and he explained the procedures involved in running and testing the breathalyzer machine used to measure alcohol content. He stated that when he arrived at the scene, the Defendant smelled strongly of alcohol, his eyes were watery and red, and his speech was slurred. He recalled that the Defendant told him he had drunk a twenty-four ounce beer and a quart of beer at a bar and in his vehicle. Taylor testified that he read the implied consent form to the Defendant and that the Defendant agreed to take a breath test. The test results indicated that the Defendant had a blood alcohol concentration of .11 percent.

The Defendant testified on his own behalf and admitted that he had drunk a twenty-four ounce beer and a quart of beer. However, he claimed that he consumed the beer at a friend's house at approximately 3:00 p.m. and did not consume any alcohol after that time. He maintained that he was not drunk at the time of his arrest. Contrary to Officer Barry's testimony, the Defendant reported that he was certain his headlights were on at the time he was stopped because "when [he] cut the key off, it made the buzzing noise." He stated that he could not hear out of one ear and that it sometimes affected his balance. He further testified that when Officer Taylor administered the breath test, he had to blow into the machine three or four times, and he claimed that Taylor would not show him the results of the test. Finally, he testified that he asked both officers to allow him to take a blood test to show that he was not drunk, and both officers refused. With regard to his driver's license, the Defendant reported that although his license was revoked at the time of his arrest, he had paid all fines owed to reinstate his license and planned to have his license reinstated the following morning.

The Defendant now argues that the trial court erred by admitting the results of his breathalyzer test. He presents a novel issue for our consideration: He contends that admission of breathalyzer test results in a D.U.I. per se case violates a defendant's confrontation rights.[1] He argues that in a D.U.I. per se case, the State is required only to prove that the defendant was driving with a blood alcohol concentration of .10 percent or more, a fact often ascertained solely from a breathalyzer machine, and he maintains that one "cannot cross examine a machine."

In State v. Sensing, 843 S.W.2d 412 (Tenn. 1992), the Tennessee Supreme Court set forth the proper "foundation to be laid for the admission of evidentiary breath tester results." Id. at 416. The court held that a testing officer must be able to testify

> (1) that the tests were performed in accordance with the standards and operating procedure promulgated by the forensic services division of the Tennessee Bureau of Investigation, (2) that he was certified in accordance with those standards, (3) that the evidentiary breath testing instrument was certified by the forensic services division, was tested regularly for accuracy and was working properly when the breath test was performed, (4) that the motorist was observed for the requisite 20 minutes prior to the test, and during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke, or regurgitate, (5) . . . . evidence that he followed the prescribed operational procedure, and (6) be able to identify the printout record offered in evidence as the result of the test given to the person tested.

Id. The court then emphasized that the "breath test result merely creates a rebuttable presumption of intoxication," id., and stated that the defense is "free to rebut the State's evidence by calling witnesses to challenge the accuracy of the particular machine, the qualifications of the operator, and the degree to which established testing procedures were followed." Id.

In State v. Deloit, 964 S.W.2d 909 (Tenn. Crim. App. 1997), this Court concluded that the State may proceed under Sensing or the Tennessee Rules of Evidence, specifically Rules 702 and 703, to establish the admissibility of evidentiary breath test results. Id. at 913-14. The court stated,

> Our view is that if the state complies with the requirements of Sensing, it is entitled to the presumption that the test results are reliable and the results may be admitted into evidence without the benefit of an expert. If not, the state may still use traditional rules of evidence to lay the foundation for admitting the evidence but there is no presumption of reliability.

---

[1] A defendant's confrontation rights are guaranteed by both the United States and Tennessee Constitutions. The Sixth Amendment to the United States Constitution provides as follows: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. XI. Similarly, the Tennessee Constitution provides that "in all criminal prosecutions, the accused hath the right . . . to meet the witnesses face to face . . . ." Tenn. Const. art. I, § 9.

Id. at 913 (citing Tenn. R. Evid. 702, 703).

Here, the Defendant concedes that the six Sensing requirements were met before introduction of his breath test results. However, he contends that the Sensing factors should not be applied in a D.U.I per se case. He argues that in a D.U.I. per se case, "[a]ll that the jury considers is the DUI Per Se. If the results are over .10, the defendant is guilty. There is no rebuttable presumption. It is hardly a trial. Obviously Sensing cannot apply to DUI Per Se." Thus, he claims that once his breath test results were admitted, he was precluded from mounting a defense because he could not cross-examine the breathalyzer machine. In addition, he argues that in a D.U.I. per se case, the State should be required to proceed under the Tennessee Rules of Evidence, specifically Rules 702, 703, and 403.

We disagree. As a preliminary matter, we note that this Court has previously determined that breathalyzer test results may be admitted either by the method prescribed in Sensing or by laying a foundation pursuant to rules 702 and 703 of the Tennessee Rules of Evidence. Id. We next conclude that the admission of the Defendant's breath test results in this case did not violate his confrontation rights. In Sensing, the supreme court concluded that breath test results merely create a rebuttable presumption of intoxication which the defense may rebut "by calling witnesses to challenge the accuracy of the particular machine, the qualifications of the operator, and the degree to which established testing procedures were followed." 843 S.W.2d at 416. Five of the six Sensing factors concern the qualifications of the officer conducting the test and the degree to which standard testing procedures were followed. As suggested in Sensing, a defendant may cross-examine the testing officer with regard to any of these factors or call other witnesses to rebut the evidence presented by the State.

The remaining Sensing factor concerns the certification and testing of the breathalyzer machine itself. The Sensing court concluded that the certification and testing of the breathalyzer machines conform with Rule 803(8) of the Tennessee Rules of Evidence, an exception to the hearsay rule regarding public records and reports. 843 S.W.2d at 416; see Tenn. R. Evid. 803(8). Reliable hearsay which comports with an exception to the hearsay rule does not violate a defendant's confrontation rights. State v. Causby, 706 S.W.2d 628, 631 (Tenn. 1986) (citing Ohio v. Roberts, 448 U.S. 56, 65 (1980)). Therefore, admission of breath test results by the method prescribed in Sensing does not violate a defendant's confrontation rights.

In this case, Officer Taylor testified that he was certified by the Tennessee Bureau of Investigation to administer breathalyzer tests, and he provided a copy of his certification as an exhibit at trial. He also testified that the machine he used to test the Defendant on October 30, 1998 was certified and had been tested on September 3, 1998 in compliance with the Tennessee Bureau of Investigation requirement that all machines be tested every ninety days. He explained the procedure he followed to test the Defendant and stated that he observed the Defendant for the requisite twenty minutes prior to the test. He then identified the printout from the breathalyzer machine which indicated the Defendant's breath alcohol content. Thus, the State laid the proper foundation as required by Sensing before introducing the results of the Defendant's breath test. After

introduction of the test results, the Defendant was free to cross-examine Officer Taylor or to call other witnesses to challenge the breathalyzer machine's accuracy, Officer Taylor's qualifications, and the extent to which proper testing procedures were followed in his case. Because we find no violation of the Defendant's confrontation rights by introduction of the test results, we affirm the judgment of the trial court.