# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
June 18, 2002 Session

## STATE OF TENNESSEE v. BRENT TOD PERKINS

**Interlocutory Appeal from the Criminal Court for Sevier County**
**No. 8473     Richard Vance, Judge**

---

### No. E2001-01826-CCA-R9-CD
### August 21, 2002

The defendant, Brent Tod Perkins, was charged with driving under the influence. The trial court determined that the officer had reasonable suspicion to stop the defendant's vehicle, but granted a defense motion to suppress the results of a breathalyser test, concluding that the officer failed to comply with the requirements of State v. Sensing, 843 S.W.2d 412 (Tenn. 1992). Both the state and the defendant were granted an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. The investigatory stop was conducted with constitutional safeguards. Because the state failed to establish adherence to the Sensing requirements by a preponderance of the evidence, the order suppressing the results of the breathalyser exam is affirmed.

**Tenn. R. App. P. 9; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; and Charles Atchley, Jr., Assistant District Attorney General, for the cross-appellee, State of Tennessee.

Bryan Delius, Sevierville, Tennessee, for the cross-appellant, Brent Tod Perkins.

## OPINION

In the early morning hours of August 17, 2000, Officer Helen Wright of the Pigeon Forge Police Department observed a vehicle parked near the entrance of the Shady Oaks Campground. The engine was running. When Officer Wright drove closer in order to investigate, the vehicle was quickly driven away. Officer Wright identified the driver as a male and followed the vehicle until it was driven to the J&B Market. The occupants of the vehicle, a male and a female, went inside the market and, upon their return, the female entered the driver's side of the truck and the male occupied the passenger seat. Officer Wright followed the vehicle as it was driven from the market and, after she saw the truck either touch or straddle the lane markers on two occasions, initiated a traffic stop.

Officer Wright directed the female driver to step out of the vehicle and asked her to explain why she and the male driver, the defendant, had switched places at the market. The woman informed Officer Wright that the defendant was too intoxicated to drive. After smelling alcohol, the officer administered field sobriety tests to the female driver and determined that she was not too intoxicated to operate the vehicle; upon discovering that the woman did not possess a valid operator's license, however, Officer Wright approached the defendant in an effort to ascertain whether he would be able to drive. Again, Officer Wright smelled an odor of alcohol and asked the defendant whether he had been drinking. When the defendant admitted that he had consumed a half pint of liquor, Officer Wright administered field sobriety tests. When the defendant failed the one-legged stand, the walk and turn, and the horizontal gaze nystagmus tests, he was arrested for driving under the influence.

After arriving at the police station, Officer Wright escorted the defendant to a small office where she asked him a number of questions in order to complete the arrest report. Approximately twenty-seven minutes after their arrival at the station, Officer Wright administered a breathalyser exam, which indicated a breath alcohol content of .11%. At the hearing on the motion to suppress, Officer Wright acknowledged that she did not observe the defendant "eyeball to eyeball" for twenty minutes and that she had performed paper work for between five and seven minutes of the observation period. In addition, Officer Wright testified that her back was to the defendant during the brief period of time required for walking from a small office into an adjacent room, where she conducted the breathalyser examination. The officer maintained that the defendant did not belch, vomit, smoke, or put anything into his mouth at any time during the twenty minutes prior to submitting to the test.

The trial court ruled as follows:

[U]nder the Korsakov decision, . . . the very strict rules laid down, this 20-minute observation period did not meet the test.

I'm going to grant the Motion to Suppress in that under the high standards required by Korsakov and Sensing that this officer was unable to observe the defendant for a continuous 20 minutes up to the moment [of] giving the test.

The trial court noted, however, that if the case were civil rather than criminal,

a jury would have no difficulty in saying that the State had carried its [burden] by a preponderance of the evidence. . . . There's no evidence that [the defendant] had anything in his mouth, but the State, under these rules is required to prove a negative. That is the law. The [c]ourt will follow the law and grant the motion.

In State v. Sensing, our supreme court held that for a breath test to be admissible, the testing officer must be able to testify as follows:

-2-

(1) that the tests were performed in accordance with the standards and operating procedure promulgated by the forensic services division of the Tennessee Bureau of Investigation (TBI);

(2) that the administering officer was properly certified in accordance with those standards;

(3) that the evidentiary breath testing instrument used was certified by the forensic services division, was tested regularly for accuracy and was working properly when the breath test was performed;

(4) that the motorist was observed for the requisite 20 minutes prior to the test, and during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke, or regurgitate;

(5) that the administering officer followed the prescribed operational procedure; and

(6) that the administering officer can identify the printout record offered in evidence as the result of the test given to the person tested.

843 S.W.2d at 416. The six requirements in Sensing are mandatory and must be proven by a preponderance of the evidence. State v. Edison, 9 S.W.3d 75, 77 (Tenn. 1999). This court has ruled that the Sensing requirements must be "scrupulously followed." State v. Harold E. Fields, No. 01C01-9412-CC-00438 (Tenn. Crim. App., at Nashville, Apr. 12, 1996). The prerequisites, once proven by a preponderance of the evidence, establish the propriety of the test results. Edison, 9 S.W.3d at 77. Further, it is the state's burden to establish compliance with each of the requirements; the defendant does not bear any burden to show non-compliance. The finding of the trial court is presumed to be correct and should only be overturned if the evidence preponderates otherwise. Id. at 78.

In this appeal, the state submits that the trial court interpreted the fourth Sensing requirement too strictly. The defendant asserts that the trial judge properly concluded that the officer did not observe him for a full twenty minutes so as to assure that he did not have any foreign matter in his mouth. Initially, case law provides that an officer may not guess, estimate or approximate the amount of time the subject was under observation. See State v. Hackney, No. 01C01-9704-CC-00152 (Tenn. Crim. App., at Nashville, Feb. 20, 1998); Fields, slip op. at 5. While an unblinking gaze is not required, "the officer must be watching the defendant rather than performing other tasks." State v. Korsakov, 34 S.W.3d 534, 540 (Tenn. Crim. App. 2000). The twenty-minute observation requirement carries with it two distinct elements: (1) The state must demonstrate that the defendant was observed for twenty minutes, and (2) the state must establish that the subject did not smoke, drink, eat, chew gum, vomit, regurgitate, belch or hiccup during the twenty minutes prior to taking the test.

The purpose of the observation requirement is, of course, to ensure "that no foreign matter is present in the defendant's mouth that could retain alcohol and potentially influence the results of the test." State v. Cook, 9 S.W.3d 98, 100-01 (Tenn. 1999). Our supreme court has found that "if credible proof establishes that the subject did not have foreign matter in the mouth, did not consume any alcoholic beverage, and did not smoke or regurgitate, then the rule is satisfied." State v. Hunter, 941 S.W.2d 56, 57-58 (Tenn. 1997).

Prior to the court's decision in Sensing, the testifying officer was required to be qualified through education, training, and experience to "interpret the test results in evidence" as a prerequisite to admissibility. Pruitt v. State, 216 Tenn. 686, 393 S.W.2d 747, 751 (Tenn. 1965). The state was required to "show that the measuring device [was] scientifically acceptable and accurate . . . and that the witness who presents the test results is qualified to interpret them." Id. In Pruitt, our supreme court stated that a lesser standard would be tantamount to approval of "pure hearsay evidence of intoxication." 393 S.W.2d at 752; see also State v. Johnson, 717 S.W.2d 298 (Tenn. Crim. App. 1986).

In 1985, our statutory scheme was amended to establish a statewide procedure for administering breath tests in such a manner as to ensure reliability and accuracy:

> (d) (2) Upon approval of the director of the Tennessee bureau of investigation, local governing bodies which have the responsibility for providing funding for sheriffs' offices and police departments, are authorized to purchase from state contracts approved for bureau purchases, scientific instruments designed to examine a person's breath and measure the alcohol content thereof, for use as evidence in the trial of cases; provided, that prior to use thereof, such instruments must be delivered to the forensic services division of the bureau for testing and certification pursuant to subsection (g). The bureau shall continue to maintain and certify the instruments and operating personnel, pursuant to subsection (g), and furnish expert testimony in support of the use of such instruments when required.
>
>         *                         *                         *
>
> (g) The bureau, through its forensic services division, shall establish, authorize, approve and certify techniques, methods, procedures and instruments for the scientific examination and analysis of evidence, including blood, urine, breath or other bodily substances, and teach and certify qualifying personnel in the operation of such instruments to meet the requirements of the law for the admissibility of evidence. When examinations, tests and analyses have been performed in compliance with such standards and procedures, the results shall be prima facie admissible into evidence in any judicial or quasi-judicial proceeding subject to the rules of evidence as administered by the courts.

Tenn. Code Ann. § 38-6-103(d)(2), (g). Thereafter, our supreme court pronounced the general foundational requirements for the admissibility of breath tests in Sensing. See 843 S.W.2d at 416.

Under the Sensing guidelines, the requirements for the admission of scientific evidence in the form of breath test results were relaxed. Id. In consequence, this court has held that strict compliance with the Sensing requirements is required for admissibility of breath test results. See Fields, slip op. at 4.

Because Officer Wright utilized a portion of the twenty-minute observation period to complete paperwork incident to the arrest, the defendant contends that the ruling in Sensing precludes admission of the breath test results. It is undisputed that the documentation took

approximately five to seven minutes to complete and involved questions by the officer, responses by the defendant, and the recordation of those responses in the report. The proof established that during the five to seven minutes required, Officer Wright was less than an arm's length away from the defendant and fully engaged in conversation with him. While the officer conceded that she could not see the defendant's face as they walked into the room where the breathalyser examination took place, the room was adjacent to the office where the defendant was questioned and testimony established that these movements would have taken only a few seconds. Officer Wright stated that there was no indication that the defendant belched, vomited, or placed any foreign matter into his mouth in this brief interlude. Nevertheless, the state was unable to establish that the officer watched the defendant for a continuous twenty-minute period. See Korsakov, 34 S.W.3d at 541. In our view, the trial court correctly concluded, under the strict requirements of Sensing and Korsakov, that the breath test results must be excluded. Because the evidence does not preponderate against the trial court's finding that the state failed to establish the fourth Sensing requirement, the judgment of the trial court suppressing the results of the breathalyser exam is affirmed.

That the state has failed to comply with the Sensing requirements does not necessarily preclude the admission of the results at trial. The state may proceed under Rules 702 and 703 of the Tennessee Rules of Evidence and establish a foundation which ensures the reliability of the test results in order to secure their admission into evidence. State v. Deloit, 964 S.W.2d 909, 913 (Tenn. Crim. App. 1997); Korsakov, 34 S.W.3d at 542. Under Rule 702, expert testimony may be used to present scientific or technical information if the evidence will "substantially assist the trier of fact." Establishing the reliability of the information is key in determining whether the trier of fact will be assisted by the evidence. See State v. Harris, 866 S.W.2d 583, 587 (Tenn Crim. App. 1992). Rule 703 imposes the requirement that the underlying facts or data be trustworthy. These general requirements for the admission of scientific or technical evidence fairly and adequately embrace the concerns expressed in Pruitt that breath test results be "scientifically acceptable and accurate for the purpose for which [they are] used, and that the witness who presents the test results is qualified to interpret them." Pruitt, 393 S.W.2d at 751.

## II

The defendant also contends that the results of the exam should be suppressed because Officer Wright lacked reasonable suspicion to conduct an investigatory stop of his vehicle. The trial court identified the following circumstances as giving rise to reasonable suspicion: (1) the lateness of the hour; (2) the officer's having been directed to "keep an eye on the trailer park;" (3) the defendant's vehicle being quickly driven away after the officer entered the area; (4) the defendant's having switched positions with his female passenger; and (5) the female driver's having "straddled" the lane markers. The trial court determined that "based upon all of the circumstances, coupled with this officer's own experience[,] . . . [the officer] did have sufficient, reasonable suspicion to stop this vehicle."

Both the state and federal constitutions protect individuals from unreasonable searches and seizures; the general rule is that a warrantless search or seizure is presumed unreasonable and any evidence discovered subject to suppression. U.S. Const. amend IV; Tenn. Const. art. I, § 7; Coolidge v. New Hampshire, 403 U.S. 443, 454, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971); State v.

Bridges, 963 S.W.2d 487, 490 (Tenn. 1997). An automobile stop constitutes a "seizure" within the meaning of both the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution. Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450, 110 L. Ed. 2d 412, 110 S. Ct. 2481 (1990); Delaware v. Prouse, 440 U.S. 648, 653, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979); State v. Binion, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994); State v. Westbrooks, 594 S.W.2d 741, 743 (Tenn. Crim. App. 1979). That the detention may be brief and limited in scope does not alter that fact. Prouse, 440 U.S. at 653; State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993); Binion, 900 S.W.2d at 705; Westbrooks, 594 S.W.2d at 743. The basic question, as indicated, is whether the seizure was "reasonable." Binion, 900 S.W.2d at 705 (citing Sitz, 496 U.S. at 444). The state always carries the burden of establishing the reasonableness of any detention. See State v. Matthew Manuel, No. 87-96-III (Tenn. Crim. App., at Nashville, Nov. 23, 1988).

Among the narrowly defined exceptions to the warrant requirement is an investigatory stop. See Terry v. Ohio, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). An investigatory stop is deemed less intrusive than an arrest. See id. In Pulley, our supreme court ruled that "the reasonableness of seizures less intrusive than a full-scale arrest is judged by weighing the gravity of the public concern, the degree to which the seizure advances that concern, and the severity of the intrusion into individual privacy." 863 S.W.2d at 30.

Our determination of the reasonableness of the stop of the vehicle depends on whether the officer had either probable cause or an "articulable and reasonable suspicion" that the vehicle or its occupants were subject to seizure for violation of the law. See Prouse, 440 U.S. at 663; State v. Coleman, 791 S.W.2d 504, 505 (Tenn. Crim. App. 1989). Probable cause has been generally defined as a reasonable ground for suspicion, supported by circumstances indicative of an illegal act. See Lea v. State, 181 Tenn. 378, 380-81, 181 S.W.2d 351, 352 (1944). While probable cause is not necessary for an investigative stop, it is a requirement that the officer's reasonable suspicion be supported by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21; Pulley, 863 S.W.2d at 30; Coleman, 792 S.W.2d at 505; see also State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992) (applying Terry doctrine in context of vehicular stop). In determining whether reasonable suspicion exists, an important factor in the analysis is that reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Pulley, 863 S.W.2d at 32 (quoting Alabama v. White, 496 U.S. 325, 330, 110 L. Ed. 2d 301, 110 S. Ct. 2412 (1990)).

Courts considering the issue of reasonable suspicion must look to the totality of the circumstances. Those circumstances include the personal observations of the police officer, information obtained from other officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. Watkins, 827 S.W.2d at 294 (citing United States v. Cortez, 449 U.S. 411, 417-18 (1981)). Objective standards apply rather than the subjective beliefs of the officer making the stop. State v. Norword, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996).

In State v. Odom, 928 S.W.2d 18 (Tenn. 1996), our supreme court held that a trial court's findings of fact in a suppression hearing should be upheld unless the evidence preponderates otherwise. The application of the law to the facts, however, remains a question of law that requires de novo review. State v. Daniel, 12 S.W.3d 420, 423-24 (Tenn. 2000). If the evidence does not involve a credibility assessment, the reviewing court must examine the record de novo without a presumption of correctness. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The arresting officer first observed the defendant's vehicle parked at the entrance of a campground at approximately 1:45 a.m. Because the department had prior concerns about suspected illegal activity in the area, Officer Wright developed immediate suspicion when the defendant's vehicle, parked with the engine idling, was driven away as she drove her cruiser within sight. That the vehicle was driven away at a high rate of speed aroused further interest. When the defendant, as driver, switched places with his female passenger at the market and the female driver either "straddled" or touched the lane markers two times, the circumstances warranted an investigatory stop. In our view, the trial court properly concluded that there were specific, articulable facts upon which to detain the vehicle.

Accordingly, the judgment of the trial court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE