IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 17, 2008

## STATE OF TENNESSEE v. THOMAS LAMONT COLEMAN

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2007-A-396     Steve R. Dozier, Judge**

_____

**No. M2007-02089-CCA-R3-CD - Filed April 6, 2009**

_____

The defendant, Thomas Lamont Coleman, was found guilty following a bench trial of violating the implied consent law. He appeals, arguing that the trial court erred in finding him guilty absent a showing by the State that the breathalyzer test was administered in accordance with the standards set forth in State v. Sensing, 843 S.W.2d 412 (Tenn. 1992). After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and D. KELLY THOMAS, JR., JJ., joined.

Matthew Mayo, Nashville, Tennessee, for the appellant, Thomas Lamont Coleman.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Matthew Stephens, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The defendant was indicted on one count of driving under the influence ("DUI") and one count of violation of the implied consent law, see Tenn. Code Ann. § 55-10-406. He pled guilty in count one to the lesser offense of reckless driving in exchange for a sentence of six months on supervised probation and a $350 fine. A bench trial was conducted on count two of the indictment, at which Officer Chad Mahoney with the Nashville-Metropolitan Police Department testified that on August 19, 2006, he made a traffic stop of the defendant for driving at night without his headlights on and for speeding. Officer Mahoney ultimately placed the defendant under arrest for DUI and, after doing so, advised the defendant of his rights and obligations under the implied

consent law. Officer Mahoney said that the defendant agreed to take the breath test, so he called dispatch for a certified breath alcohol test administrator. He stated that Officer Kevin Lovell responded to administer the test but was unable to get a sufficient sample from the defendant, which Officer Lovell deemed as a refusal.

On cross-examination, Officer Mahoney testified that officers typically instruct the person taking the test to "[t]ake a deep breath and do not blow until your lips are around the actual tube, . . . [a]nd then blow as hard as you possibly can" for approximately four seconds. He said they also tell the person, "It's impossible to beat this test." Officer Mahoney explained that the breathalyzer machine gives the officer the option "to hit the refusal button" after each insufficient sample but automatically interprets three insufficient samples as a refusal. He said that "typical protocol is [to] go through the three and then you get the refusal." Officer Mahoney stated that Officer Lovell made the determination that the defendant should be taken into custody but that he was the officer who actually took the defendant to the police station. Officer Mahoney acknowledged that the defendant would have been taken into custody anyway due to an outstanding probation violation warrant. Officer Mahoney acknowledged that the only interaction he witnessed between Officer Lovell and the defendant was when the defendant blew into the machine the last time. He said that the defendant was cooperative during the stop and appeared to understand everything "[f]or the most part."

Officer Lovell testified that he responded to a call to administer a breath test to the defendant on August 19, 2006. Officer Lovell said he read the implied consent law to the defendant, and the defendant agreed to submit to a breath test. Whereupon, he observed the defendant for twenty minutes and then instructed him on how to take the test, saying it was similar to "blowing up a balloon." Officer Lovell recalled that he handed the mouthpiece to the defendant and "when he started to blow, he left the sides of the mouth open, where most of the air came out the sides and all the air did not go into the mouthpiece[;] so, it gave a[n] insufficient sample." Officer Lovell said he could see that the defendant was not making a complete seal around the mouthpiece, so he again instructed the defendant while the machine reset. Officer Lovell stated that after the defendant "did the same thing the second time[,] . . . [he] took that as a refusal [because] he was intentionally not blowing properly into the machine[.]" Officer Lovell related that during the time he spent with the defendant, the defendant indicated that he was "very upset that . . . his CDL was in jeopardy over this arrest."

On cross-examination, Officer Lovell testified that he explained to the defendant how to use the machine but did not give him a demonstration. He acknowledged that the defendant blew into the tube as hard as he was told to; he just did not properly seal his mouth around the tube. Officer Lovell said that after the first insufficient reading, he told the defendant to make a complete seal because he was leaving his mouth open, and the defendant said he understood. Officer Lovell acknowledged that he could have given the defendant a third opportunity but decided not to because "[i]t was apparent he was not going to give us a sample." Officer Lovell agreed that he could have asked the defendant for a blood sample but said he did not do so because it was not that the defendant was "unable to give a breath sample [but instead] . . . was purposefully not blowing into

the machine." Asked when the machine was last calibrated, Officer Lovell did not know the exact date but noted that it is calibrated every ninety days.

The defendant testified that this was the first time he had been arrested on suspicion of DUI. He said he sealed his lips to the machine "the best . . . that [he] could" and felt that he had blown the way the officer requested. The defendant stated that he offered to take the test again after the officer told him he was non-compliant, but the officer said he was "going to jail." The defendant recalled that the officer who took him to the police station told him he was going to be arrested anyway on a probation violation warrant.

On cross-examination, the defendant explained that he had been charged with domestic assault for allegedly pushing his wife and had received probation. He stated that his probation officer told him he had violated his probation by failing to pay restitution and by failing to report. He claimed that "[he] had been reporting, but . . . the last time [he] . . . wasn't able to report, [he] was outta town." With regard to the breath test, the defendant admitted that the officer told him how to seal his lips properly around the mouthpiece and told him again after the first test returned an insufficient result. However, he maintained that he sealed his lips "the best [he] could." The defendant acknowledged that he had blown up a balloon before and knew how to seal his lips around a straw. The defendant admitted that a conviction for DUI would be detrimental to his profession as a truck driver as would a violation of the implied consent law. He maintained, however, that he did not pretend to blow in an effort to beat the test. The defendant said he had drunk three or four beers earlier in the day but denied being intoxicated at the time of his test.

Following the conclusion of the proof, the trial court found the defendant guilty of violating the implied consent law. The defendant appealed.

## ANALYSIS

On appeal, the defendant argues that the trial court erred in finding that he violated the implied consent law absent a showing by the State that the breath test was administered in accordance with the standards set forth in State v. Sensing, 843 S.W.2d 412 (Tenn. 1992). He asserts that "the State should be held to the same standards under Sensing when establishing that a person has failed to properly consent" to a breath alcohol test. The State responds that the trial court correctly determined that the defendant refused to comply with the test; therefore, the admissibility of the results was not at issue and the Sensing standards did not have to be established. As we will address below, we agree with the State.

Tennessee Code Annotated section 55-10-406(a)(1) (2006) provides that "[a]ny person who drives a motor vehicle in this state is deemed to have given consent to a test or tests for the purpose of determining the alcoholic content of that person's blood . . . ." Any person who refuses to submit to the test or tests after being placed under arrest and advised of the consequences of refusing to do so, "shall be charged with violating this subsection[.]" Id. § 55-10-406(a)(4)(A).

The general fundamental requirements for the admission of breath alcohol test results were established in Sensing, 843 S.W.2d at 416-18; State v. Bobo, 909 S.W.2d 788, 790 (Tenn. 1995); and State v. Deloit, 964 S.W.2d 909, 912 (Tenn. Crim. App. 1997). The Sensing standard requires that an officer be able to testify that: (1) the tests were performed in accordance with standards and procedures promulgated by the forensic services division of the Tennessee Bureau of Investigation (TBI); (2) the testing officer was properly certified; (3) the breath testing instrument used was certified by the TBI, was regularly tested for accuracy, and was working properly when the test was performed; (4) the subject was observed for twenty minutes prior to the test and, during this time, did not have foreign matter in his mouth, did not consume alcohol, smoke, or regurgitate; (5) the officer followed the prescribed operational procedure; and (6) the testing officer identified the printout record offered into evidence as being the test result of the subject involved. Sensing, 843 S.W.2d at 416; Deloit, 964 S.W.2d at 912.

We first note that the defendant cites no authority for his assertion "that the State should be held to the same standards under Sensing when establishing that a person has failed to properly consent" to a breath alcohol test, nor has our research revealed any such authority. Moreover, there is no language in Sensing that indicates our supreme court intended for its application to extend in the manner urged by the defendant. We are furthermore unpersuaded by the defendant's assertion because, as noted by our supreme court in Bobo, 909 S.W.2d at 790, "Sensing established the prerequisites for threshold admissibility of breath alcohol test *results*." (emphasis added). Here, there were no results to be admitted.

A panel of this court addressed a similar issue in State v. Craig Patrick Hebert, No. M2002-03088-CCA-R3-CD, 2004 WL 221318 (Tenn. Crim. App. Feb. 4, 2004), perm. to appeal denied (Tenn. June 21, 2004), in which that defendant argued that the court erred in allowing the arresting officer to testify that the breathalyzer received an "insufficient sample" because the State did not establish the Sensing requirements. Id. at *2, *4. In that case, the defendant agreed to take a breathalyzer test, but then "blew" an insufficient sample, and the officer testified to such at the trial. Id. at *3. The panel noted, "Testimony concerning the actual administration of the breathalyzer test is very different from testimony concerning the results of the breathalyzer test. . . . The Sensing requirements are designed to insure that an accurate *result* is produced and [is] not applicable in this situation." Id. at *4. See also State v. Doroteo Aparicio Lazaro, No. M2000-01650-CCA-R3-CD, 2001 WL 1089750 (Tenn. Crim. App. Sept. 18, 2001) (stating "[t]he requirements set forth in Sensing apply only when the State seeks to introduce into evidence the *results* of a Breathalyzer test. Here, there were no results available; therefore, Sensing did not apply.").

Correspondingly, the issue here was whether the defendant refused to submit to a breath test. At the bench trial, Officer Lovell testified that the defendant twice failed to follow his instructions for taking the breath test, which he interpreted as a refusal. After hearing all the testimony, the trial court found as follows:

> [W]e're not here on any result because there was an insufficient sample; so, we're not here on some legal issue dealing with State versus Sensing, in terms of can that result

-4-

be used and has there been a showing -- the twenty-minute observation, even though there's been testimony about it, is -- is not necessarily required for this particular hearing that we're having . . . in terms of whether there was a refusal to comply with the Implied Consent Law.

But I do find, based on Officer Lovell's testimony that the machine's working -- the -- the real issue is, is there a refusal.

A refusal, according to the dictionary, is defined . . . as "to show or express unwillingness to do or comply with" whatever you're refusing. "To show or express an unwillingness to do or comply with."

I'm all for the concern that expressed here by [defense counsel], in terms of the repercussions of any finding of a violation of an Implied Consent Law.

But I think that goes back, in the Court's mind, to the motivation for not blowing. I mean, he's expressing that plea or that cry for leniency or explaining to the officer the effect that would have on his commercial driver's license, at the time of the test.

So, it's not a situation, where [the defendant] was a two-0 or a two-five and just stumbling drunk and did not understand what he needed to do. I mean, he knew what would happen . . . and understood . . . even according to him, the repercussions of not complying with the Implied Consent Law.

And there's even stronger motivation, in his behalf versus someone with a regular license, to not comply with that. And I think that's what's occurred.

I think the State's shown, with these two officers, that there was a refusal, that there was a showing of an unwillingness to comply with the law.

The trial court judged the credibility of the witnesses and determined that the State proved that the defendant refused to take the breath test. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). In a bench trial, the verdict of the trial judge is entitled to the same weight on appeal as that of a jury verdict. See State v. Horton, 880 S.W.2d 732, 734 (Tenn. Crim. App. 1994). The record supports the conclusion that the defendant refused to submit to the breath alcohol test. As such, the requirements outlined in Sensing were not implicated, and the defendant is not entitled to relief.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE