IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 22, 2000

## STATE OF TENNESSEE v. MICHAEL G. WALDRUM

**Appeal from the Circuit Court for Williamson County**
**No. II-142-698     Timothy L. Easter, Judge**

_____

**No. M1999-01924-CCA-R3-CD - Filed December 8, 2000**

_____

The defendant appeals his conviction for DUI, fourth offense, contesting the sufficiency of the evidence supporting his conviction; the validity of his seizure and arrest; and the admissibility of the breath alcohol test result, the breath alcohol test operator's videotaped former testimony, and the breath alcohol test machine's certification documents. We conclude that the trial court erred in finding the breath test operator unavailable and that his videotaped testimony should not have been allowed. We reverse the judgment of conviction and remand the case for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Jeffrey S. Pulley, Nashville, Tennessee, attorney for appellant, Michael G. Waldrum.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Smith, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Sharon E. Tyler, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Michael G. Waldrum, appeals as of right his conviction by a jury for driving under the influence (DUI), fourth offense, particularly, for driving while his alcohol concentration was .10 percent or more. See Tenn. Code Ann. § 55-10-401(a)(2). On appeal, the defendant contends that (1) the evidence was insufficient to support his conviction, (2) the evidence obtained after he was unconstitutionally seized should have been suppressed, (3) the evidence obtained after he was illegally arrested should have been suppressed, (4) the arresting officer did not properly perform the required twenty-minute observation period before administering the breath alcohol test, (5) the videotaped former testimony of the breath alcohol test operator was inadmissible, and (6) the

breath alcohol machine's certification documents were improperly admitted through the testimony of a records keeper.

At trial, Pamela Rose testified as follows: On March 26, 1998, she was awakened between 3:00 a.m. and 3:30 a.m. by a loud noise outside her Temple Road home. She looked out a window and saw a dark-colored truck passing in front of her house. The truck, which was playing loud music, was slowing down and speeding up as it traveled down the street. After she saw the truck pass in front of her house the third time, she called the police and asked them to investigate. She tried to go to sleep, but she kept hearing the loud music. Around 4:45 a.m., she called the police again, got dressed, went to her car, and drove in the direction of the truck. She saw the truck, with loud music still playing, parked in a private, dirt driveway just a few driveways down from her house. She drove past the truck and saw a police car parked in the parking lot of the Temple Hills Golf Club. She told the police officer that she had made the complaints and informed the officer where the truck was parked.

Deputy Debra Rogers with the Williamson County Sheriff's Department testified as follows: Around 4:45 a.m. on March 26, 1998, she was dispatched to investigate a vehicle that was driving up and down Temple Road playing loud music. She arrived at the scene at 5:02 a.m. and drove the length of Temple Road, but she did not see any cars. She parked in the Temple Hills Golf Club's parking lot to fill out some paperwork. While parked there, Pamela Rose approached her car and told her that she had made the complaints and where the truck was parked. Deputy Rogers drove to the dirt driveway and pulled her car into the driveway behind the truck, which had not been at this location when she drove past it about fifteen minutes earlier. The driveway led to, and the truck was parked in front of, a locked gate with a no trespassing sign. However, she did not notice the sign at that time. When she approached the truck, she saw the defendant in the driver's seat and the keys in the ignition. She also noticed that there was a compact disk player in the passenger seat. She asked the defendant what he was doing, and he said that he had driven from Nashville to speak to his dead mother. The defendant's speech was slurred, his eyes were bloodshot, and there was an odor of alcohol coming from the truck. The defendant said that he had consumed four beers earlier that night. Although there was not an open container of alcohol in the truck, there were about eight unopened beers. When the defendant left his car, he was unsteady on his feet. After the defendant failed several field sobriety tests, including the walk and turn test and the one-leg stand test, she arrested the defendant. She read the defendant an implied consent form, and he agreed to take a breath alcohol test. She took the defendant to the Williamson County Jail where she reread the implied consent form to the defendant. After he signed the form, he was placed on a bench in the booking office, and she began her twenty-minute watch, at the conclusion of which she took the defendant to perform the test. Deputy Dewayne Moore administered the test, which resulted in a .21 percent reading.

On cross-examination, Deputy Rogers said that she observed the defendant for twenty minutes from the booking desk, which was about twelve feet from where the defendant was sitting. She testified that she wrote some reports during the twenty minutes and that she did not watch the defendant eyeball to eyeball for the entire period. She stated that she was trained to prepare

paperwork and watch subjects at the same time. She said that the purpose of the twenty-minute period is to insure that the person does not take anything into his mouth which could affect the breath alcohol test. She said that if the defendant had belched, hiccupped, vomited, or put anything in his mouth, she would have been able to hear it.

The state introduced the videotaped former testimony of Dewayne Moore, who administered the breath alcohol test and had testified at a pretrial hearing. The trial court ruled that Mr. Moore was an unavailable witness under Tenn. R. Evid. 804 and allowed the videotaped testimony, which was as follows: At the time of his testimony, he worked for Transcorp America, involved in the nationwide extradition of prisoners, but on March 26, 1998, he worked for the Williamson County Sheriff's Department and administered the defendant's breath alcohol test. He was certified by the forensic services division of the Tennessee Bureau of Investigation (TBI) to administer such tests. He followed the set procedure, and the result of the defendant's test was .21 percent. He said that the testing machine, the Intoximeter EC-IR, is certified by the TBI.

On cross-examination, Mr. Moore testified that he had been certified to operate the Intoximeter EC-IR in November of 1997. He said that he did not know who calibrated the machine or when it was last calibrated. He also stated that he relied on the arresting officer to do the twenty-minute observation.

Corporal Teresa Gray, a records keeper for the Williamson County Sheriff's Department, testified that the TBI is required to certify the Intoximeter every ninety days. She stated that someone from the TBI would come to the jail and test the machine and that she kept the records of these tests. She testified that the Intoximeter in question was certified on March 3, 1998, and on May 21, 1998. The certificates reflecting these dates were admitted as exhibits. On cross-examination, she admitted that she kept the records of the certifications but had no way of knowing if the machine was working properly on March 26, 1998.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant argues that the evidence is insufficient to support his conviction for driving while his alcohol concentration was .10 percent or more because the breath test relied upon was taken an hour and one-half after he was driving. The defendant asserts that the test result does not show, and the state offered no evidence of, what his alcohol concentration was when he was driving his truck. The defendant also argues that because he was parked in a private driveway, the jury could not have found that he was driving or in physical control of his truck "on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park, or any apartment house complex, or any other premises which is generally frequented by the public at large," which is a required element of DUI. Tenn. Code Ann. § 55-10-401(a). The state responds that the evidence is sufficient to support the conviction.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier

of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

In the present case, Ms. Rose testified that the defendant was driving up and down Temple Road and that she followed him to the dirt driveway where he parked. Ms. Rose told Deputy Rogers where the defendant had parked his truck, which Deputy Rogers then investigated. Deputy Rogers testified that the defendant smelled of alcohol, his speech was slurred, and his eyes were bloodshot. Also, the defendant admitted drinking earlier in the evening and performed poorly on several field sobriety tests. Although Deputy Rogers never saw the defendant drive the truck, she said the truck was not parked in the dirt driveway fifteen minutes earlier when she drove past that location. Finally, the defendant's breath test result was a .21 percent. The jury could have inferred from this evidence that the defendant was guilty beyond a reasonable doubt of driving on a public road while his alcohol concentration was .10 percent or more.

## II. SEIZURE

The defendant argues that the trial court erred in denying his motion to suppress all evidence obtained after his initial seizure, which he argues occurred when Deputy Rogers parked behind his truck, because Deputy Rogers did not have a reasonable suspicion, based upon specific and articulable facts, to believe that the he had committed or was about to commit a criminal offense. The state responds that Deputy Rogers' initial approach to the defendant's truck was not a seizure.

At the suppression hearing, Deputy Rogers was the only witness that testified. Her testimony was substantially similar to that at trial with the following exceptions: When she drove to the location where the defendant was parked, she pulled into the dirt driveway at an angle. The defendant could not have backed his truck out unless he backed out at an angle. She did not know who owned the driveway where the defendant was parked. She had not seen the defendant drive the truck or commit any crime. However, she initially approached the truck because it was suspicious. She thought the truck was suspicious because she had received a dispatch describing a truck driving up and down the road playing loud music, and the woman who had made the complaint told her that the truck was parked in a dirt driveway off the main road. Moreover, the truck was not parked at that location when she passed it fifteen minutes earlier. Based upon Deputy Rogers' testimony, the trial court denied the defendant's suppression motion, ruling that the officer had reasonable suspicion to believe that the defendant had committed or was about to commit a crime and that this suspicion was based upon articulable facts, specifically the hour of the morning, the location of the truck, and the fact that an individual who lived in the neighborhood had complained to the police.

When reviewing the denial of a motion to suppress, we must afford the trial court's findings of fact the weight of a jury verdict and affirm the denial unless the evidence in the record preponderates against the findings of fact or a rule of law has been erroneously applied. State v.

Odom, 928 S.W.2d 18, 23 (Tenn. 1996). However, the application of law to the facts found by the trial court is a question of law, which we review de novo. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000) (citing State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997)).

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and "Article 1, Section 7 of the Tennessee Constitution is identical in intent and purpose with the Fourth Amendment." State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997) (citation omitted). The Fourth Amendment requires officers to have reasonable suspicion before seizing a citizen. Daniel, 12 S.W.3d at 424. However, "not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen" has a seizure occurred. Id. In determining whether a seizure has occurred, "a court must consider all the circumstances surrounding the encounter to determine whether police conduct would have communicated to a reasonable person that the person was not free to decline the officer's request or otherwise terminate the encounter." Id. at 425 (citing Florida v. Bostick, 501 U.S. 429, 440, 111 S. Ct. 2382, 2389 (1991)). If the police-citizen encounter constitutes a seizure, then, to be valid, the officer must have "a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been, or is about to be, committed." State v. Moore, 775 S.W.2d 372, 377 (Tenn. Crim. App. 1989) (citing Terry v. Ohio, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 1879-80 (1968)). In determining whether an officer's reasonable suspicion is supported by specific and articulable facts, "a court should consider the totality of the circumstances – the entire picture." Moore, 775 S.W.2d at 377 (citations omitted).

In this case, we must first determine whether a seizure occurred. If one occurred, then we must determine whether Deputy Rogers had a reasonable suspicion based upon specific and articulable facts that a crime had been or was about to be committed. The defendant argues that he was seized when Deputy Rogers parked her car behind his truck and blocked him, restricting his freedom to leave. When Deputy Rogers was questioned about how she parked her car, she testified that she pulled behind the defendant's truck at an angle. When she was asked whether the defendant could have backed his truck out, she responded, "Probably not, not unless he came out at an angle." From this testimony, it is unclear whether the defendant was seized at the moment Deputy Rogers parked her car. However, it is not necessary to resolve this issue because we conclude that Deputy Rogers had reasonable suspicion, based upon specific and articulable facts, that a crime had been or was about to be committed. Around 4:45 a.m., Deputy Rogers received a dispatch to investigate a truck that was traveling up and down Temple Road playing loud music. While parked in a parking lot, a woman approached her car, identified herself as the person who had made the complaints, and told her that she had followed the truck and knew where the truck was parked. When Deputy Rogers drove to that location, a dirt driveway that connected to the main road and led to a locked gate, she realized that the truck had not been parked there when she drove past that location about fifteen minutes earlier. These circumstances, as the trial judge also found, created sufficient reasonable suspicion to believe that a crime had been or was about to be committed.

# III. ILLEGAL ARREST

The defendant's third argument is that he was illegally arrested without a warrant for a misdemeanor offense that was not committed in Deputy Rogers' presence. The defendant's argument focuses on the fact that Deputy Rogers never saw him drive or in physical control of the truck while "on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park, or any apartment house complex, or any other premises which is generally frequented by the public at large," which is a required element of DUI. See Tenn. Code Ann. § 55-10-401.

An officer may not make a warrantless arrest for a misdemeanor offense unless such offense is committed in the officer's presence. See Tenn. Code Ann. § 40-7-103(a)(1); State v. Duer, 616 S.W.2d 614, 615 (Tenn. Crim. App. 1981) (citations omitted). Two limited exceptions to the "in the presence" rule exist for certain circumstances in which an officer suspects an individual of DUI. However, both of these exceptions involve an intoxicated driver in a traffic accident. See Tenn. Code Ann. § 40-7-103(a)(6), (8). The state concedes that the defendant did not commit a DUI offense in Deputy Rogers' presence because she never observed him driving or in physical control of the truck in any of the areas designated by the statute. The state also concedes that neither of the "in the presence" exceptions apply in this case. However, the state argues that the defendant has waived this issue and, regardless of waiver, that the arrest was legal because Deputy Rogers could have lawfully arrested the defendant for criminal trespass.

The state first argues that the defendant has waived the warrantless arrest issue because it was never presented as a statutory violation in the trial court, but only as a violation of the United States and Tennessee Constitutions. While we recognize that the defendant did not cite to the applicable statute in his motion to dismiss, this does not waive his right to appeal the issue. The defendant moved to dismiss the case on the grounds that he was illegally arrested because he was arrested without a warrant for a misdemeanor offense that was not committed in an officer's presence. The trial court heard this argument and denied the defendant's motion. Therefore, the defendant is entitled to appeal the issue. See T.R.A.P. 36(a).

The state also argues that the arrest was legal because Deputy Rogers had grounds to arrest the defendant for criminal trespass. "Where an officer makes an arrest which is properly supported by probable cause to arrest for one offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." Duer, 616 S.W.2d at 616 (citing 6A C.J.S. Arrest § 21 (1975)). "In other words, the test does not rest on the officer's subjective conclusion as to what offense has been committed. Rather, the test is whether the facts and circumstances present are sufficient to enable the court to see that some offense has been committed that would have justified a legal arrest." Duer, 616 S.W.2d at 616.

In the present case, the state argues that facts and circumstances existed such that Deputy Rogers would have been justified in arresting the defendant for criminal trespass, which is defined, in relevant part, as:

(a)  A person commits criminal trespass who, knowing the person does not have the owner's effective consent to do so, enters or remains on property, or a portion thereof.  Knowledge that a person did not have the owner's effective consent may be inferred where notice against entering or remaining is given by:

. . . .

(3) Posting reasonably likely to come to the attention of intruders.

Tenn. Code Ann. § 39-14-405(a)(3).  The state argues that the defendant was parked on private property, on which a sign was posted warning that trespassers would be prosecuted.  Further, the defendant parked his truck right in front of the gate on which the sign was posted.  However, the defendant, as Deputy Rogers testified, was on the street side of the gate.  He was not in the area prohibited by the posted sign.  Therefore there are no facts or circumstances in the record that would have justified Deputy Rogers arresting the defendant for criminal trespass.

However, the record reveals that Deputy Rogers could have lawfully arrested the defendant for public intoxication, which is defined as follows:

(a) A person commits the offense of public intoxication who appears in a public place under the influence of a controlled substance or any other intoxicating substance to the degree that:

(1) The offender may be endangered;
(2) There is endangerment to other persons or property;  or
(3) The offender unreasonably annoys people in the vicinity.

Tenn. Code Ann. § 39-13-310.  A "public place" is one in which "the public or a group of persons has access."  Tenn. Code Ann. § 39-11-106(a)(29).  "A location to which such a right to access exists does not lose its character as a 'public place' simply because others are not present to observe the defendant's drunken condition."  State v. Lawson, 776 S.W.2d 139, 140 (Tenn. Crim. App. 1989).  Moreover, an individual's presence inside a car on a public road does not convert the individual's intoxication to one of private rather than public.  Id.

In State v. William David Harmon, the defendant was unconscious in his car, which was the only car parked in the parking lot of a restaurant that had closed for the night.  No. 46, Johnson County, slip op. at 4 (Tenn. Crim. App. Jan. 4, 1990), app. denied (Tenn. Mar. 5, 1990).  The parking lot was not fenced or roped off, and it was in full view of the public.  Id.  We held that the defendant was legally arrested for public intoxication, concluding that the parking lot was an area to which the public had access.  Id.

In the present case, the defendant was parked in a driveway that connected to Temple Road.  While the driveway led to a locked gate, nothing restricted the public's access to the driveway itself.

Therefore, the driveway, like the parking lot in Harmon, is a public place as defined by the statute. Because Deputy Rogers had sufficient evidence that the defendant was intoxicated, the only remaining question is whether the defendant was intoxicated to one of the degrees listed in the statute. Deputy Rogers knew that the defendant had been driving recently because the truck was not there when she passed by the location fifteen minutes earlier. The defendant was intoxicated while sitting in his truck with the keys in the ignition and had the immediate ability to drive again on the public roads. We conclude from these facts that the defendant as well as other persons or property were endangered. See State v. James Shannon Stanley, No. 01C01-9206-CC-00183, Williamson County (Tenn. Crim. App. Jan. 28, 1993) (concluding that an intoxicated passenger in a car in which the driver was arrested for DUI was properly arrested for public intoxication because had he decided to drive the car, he would have been a danger to himself as well as to others); see also State v. Charles Lee White, No. 02C01-9501-CC-00025, Madison County (Tenn. Crim. App. Sept. 20, 1995), app. denied (Tenn. Mar. 4, 1996). Therefore, because Deputy Rogers would have been justified in arresting the defendant for public intoxication, the defendant's arrest was legal.

## IV. BREATH TEST PROCEDURES

The defendant argues that the trial court erred in admitting the result of the breath alcohol test because the state failed to lay the proper foundation as required by State v. Sensing, 843 S.W.2d 412 (Tenn. 1992). The defendant specifically asserts that the required twenty-minute observation period was not satisfied. The state responds that the arresting officer, Deputy Rogers, observed the defendant for twenty continuous minutes as required by Sensing.

The defendant moved before trial to determine the admissibility of the breath alcohol test, and the trial court found that the state proved all of the Sensing requirements and, thus, that the result of the test was admissible. The defendant renewed his objection at trial, asserting that the state failed to show compliance with the required twenty-minute observation period. The trial court overruled his objection and allowed the result of the breath test to be admitted into evidence. On appeal, we presume that the trial court's determination regarding the Sensing requirements is correct unless the evidence preponderates otherwise. State v. Edison, 9 S.W.3d 75, 78 (Tenn. 1999).

In Sensing, the Tennessee Supreme Court set forth six requirements for the admissibility of breath alcohol test results, including that "the motorist was observed for the requisite 20 minutes prior to the test, and during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverages, smoke, or regurgitate." Sensing, 843 S.W.2d at 416. We have previously addressed the parameters of the twenty-minute observation period. In State v. Deloit, 964 S.W.2d 909 (Tenn. Crim. App. 1997), the officer observed the defendant for fifteen minutes while he was performing field sobriety tests and then watched the defendant in the rearview mirror for an additional ten to thirteen minutes while he filled out paperwork in the front seat of the police car. The officer admitted that he could not see the defendant while he was writing. This court held that the officer's actions did not meet the twenty-minute observation requirement, noting that the officer must "'continuously observe[ ] the test subject, with his or her eyes, for the entire twenty-minute observational period.'" Id. at 916-17 (quoting State v. Harold E. Fields, No. 01C01-9412-CC-00438,

Williamson County, slip op. at 5 (Tenn. Crim. App. Apr. 12, 1996)) (brackets in original); see also State v. McCaslin, 894 S.W.2d 310, 311-12 (Tenn. Crim. App. 1994) (holding that being in the presence of the officer while in the backseat of the patrol car did not satisfy the twenty-minute observation prerequisite).

In Fields, the officer stayed in a room with the defendant but filled out paperwork and entered data into the Intoximeter during the observation period. We noted that "in light of the relaxed standard for admitting breath alcohol test results, the threshold requirements for admissibility of such test results must be scrupulously followed." Fields, slip op. at 4. The officer must be able to show that during the twenty-minute period, nothing happened that would affect the validity of the test. Id., slip op. at 5. While an "unblinking gaze" for twenty minutes is not required, we have previously stated that the officer must be watching the defendant rather than performing other tasks. State v. Richard Korsakov, No. E1999-01530-CCA-R3-CD, Hamilton County, slip op. at 6 (Tenn. Crim. App. July 13, 2000).

In Korsakov, the officer did paperwork while observing the defendant for twenty minutes. The officer testified that the defendant did not eat, drink, smoke, vomit, or belch during the observation period. However, the officer admitted that he was not looking at the defendant while he was writing. Despite the officer's confidence that he would have heard or smelled any of the listed activities that he did not see, we noted that although "often a belch or regurgitation will produce a noise capable of being heard by another person, this is not always the case." Id. (citing Fields, slip op. at 5). An officer's belief that he would have heard or smelled anything he did not see does not satisfy the prerequisite that the defendant must be observed for twenty minutes. Korsakov, slip op. at 6.

In this case, at the pretrial hearing to determine the admissibility of the breath alcohol test result, Deputy Rogers testified that she did not remember if she had started doing her paperwork during the twenty-minute observation period but admitted that she could have been doing paperwork. She affirmatively stated, however, that she maintained constant eye contact with the defendant's person for at least twenty minutes. Under these facts, we cannot say that the evidence preponderates against the trial court's ruling that the twenty-minute observation period was performed as required by Sensing. However, at trial Deputy Rogers testified, similar to the officers in Fields and Korsakov, that she did do paperwork during the twenty-minute observation period. She testified that she was a few feet away from the defendant and would have been able to hear anything that happened. She stated that the purpose of the twenty-minute observation is to insure that nothing goes in or comes out of the individual's mouth and that nothing went in or came out of the defendant's mouth during her observation. She admitted, however, that she was not watching the defendant while she was writing.

After this trial testimony, the defendant renewed his objection to the admissibility of the breath test result on the grounds that the state failed to show that the twenty-minute observation period was satisfied. The trial court stated that it had ruled on the objection before and that it was standing by its ruling. To the extent that it may be inferred that this ruling is based upon Deputy

Rogers' trial testimony, we believe the evidence preponderates against the trial court's finding that the required twenty-minute period was satisfied. However, the trial court did not make, nor did the defendant request it to make, any findings of fact when it denied the defendant's objection at trial. Therefore, we cannot determine whether the trial court's ruling was based upon the testimony from trial or from the pretrial hearing. As a result, we are not in a position to determine whether the evidence preponderates against the trial court's finding.

## V. VIDEOTAPED FORMER TESTIMONY

At the pretrial hearing to determine the admissibility of the breath test result, Mr. Dewayne Moore, who administered the breath alcohol test to the defendant, testified that he was certified by the forensic services division of the TBI to administer such tests and that he properly administered the test to the defendant. Although Mr. Moore did not appear at trial, the trial court ruled that he was an unavailable witness under Tenn. R. Evid. 804 and allowed the state to play his videotaped former testimony, which established three of the Sensing requirements – evidence that the tests were performed in accordance with the standards and operating procedure promulgated by the forensic services division of the Tennessee Bureau of Investigation; evidence that the test operator followed the prescribed operational procedure; and evidence that the printout record of the test result offered into evidence was the result of the test given to the defendant. Sensing, 843 S.W.2d at 416. The defendant argues that Mr. Moore was not unavailable under Rule 804 and that allowing the videotaped testimony violated his constitutional right to be confronted with witnesses against him. The state responds that Mr. Moore was unavailable and that the defendant's constitutional rights were not violated. We agree with the defendant, concluding that the trial court erred in finding Mr. Moore unavailable and that allowing the taped testimony violated his constitutional right to confrontation.

The Tennessee Supreme Court has held that "the former testimony exception to the hearsay rule has sufficient 'indicia of reliability' so that the admission of evidence thereunder comports with the right of confrontation." State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993). Therefore, if Mr. Moore's videotaped former testimony satisfies the requirements of the former testimony hearsay exception, then it would also satisfy the defendant's right to confrontation. Rule 804(b)(1) states the former testimony exception to the hearsay rule of exclusion, see Tenn. R. Evid. 802. However, this exception applies only when the witness is unavailable, which is defined in section (a) of the rule. The relevant part of the definition is section (a)(5), which states that the declarant is unavailable when "absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance by process." Moreover, the state must show that "the declarant is truly unavailable after good faith efforts to obtain her presence" to satisfy the defendant's constitutional right to confrontation. State v. Arnold, 719 S.W.2d 543, 548 (Tenn. Crim. App. 1986).

On the morning of the trial in the present case, the state moved to have Mr. Moore declared an unavailable witness. The state asserted that Mr. Moore no longer worked for the Williamson County Sheriff's Department and that his current job required him to work throughout the country. The state said that it had a difficult time procuring Mr. Moore's presence at the pretrial hearing and

that it did not know where Mr. Moore was at the present time. The state asserted that Mr. Moore was beyond its subpoena power. However, the state admitted that it did not know where Mr. Moore lived. More importantly, the state did not offer any evidence of any attempt to locate Mr. Moore. Given these facts, the state failed to show that Mr. Moore was "truly unavailable after good faith efforts" to obtain his presence. Accordingly, Rule 804's requirement of unavailability was not satisfied, and the defendant's right to confrontation was violated by allowing Mr. Moore's former testimony. Without Mr. Moore's testimony, the state fails to establish three of the Sensing requirements. Therefore, the result of the defendant's breath alcohol test should not have been admitted into evidence. Because the defendant was convicted of driving while his alcohol concentration was .10 percent or more, Tenn. Code Ann § 55-10-401(a)(2), we reverse the judgment of conviction and remand the case for a new trial.

Relative to a new trial, we note that the defendant was indicted in separate counts of driving under the influence, Tenn. Code Ann. § 55-10-401(a)(1), and driving with an alcohol concentration of .10 percent or more, Tenn. Code Ann. § 55-10-401(a)(2). The trial court instructed the jury that the two counts were alternative and to return a verdict that (1) the defendant was guilty of driving under the influence, (2) the defendant was guilty of driving with an alcohol concentration of .10 percent or more, or (3) the defendant was not guilty. The jury returned a verdict that the defendant was guilty of driving with an alcohol concentration of .10 percent or more. "Typically, when a jury is given a multi-count charge and returns a special verdict convicting the defendant of one of the charges but which is silent as to the other charges, the defendant is deemed acquitted of the other charges." State v. Burns, 979 S.W.2d 276, 290-91 (Tenn. 1998) (citation omitted). However, when the jury is denied the opportunity to consider the other charges, then the doctrine of implied acquittal does not apply. Id. at 291-92 (holding that doctrine of implied acquittal did not apply to charges on which the jury was silent when the trial court's instructions effectively denied the jury the opportunity to return a verdict on those charges). Such is the case before us. Therefore, the verdict does not operate as an implied acquittal on the driving under the influence charge. Accordingly, the state may proceed on both charges.

## VI.  CERTIFICATION DOCUMENTS

At trial, the state introduced the breath testing machine's certification documents through Corporal Teresa Gray, a records keeper for the Williamson County Sheriff's Department. The certification procedure is performed by the TBI and is set out in Tenn. Code Ann. § 38-6-103. The defendant argues that his constitutional right to confrontation was violated because the TBI official who performed the certification tests did not testify. The defendant asserts that this effectively allowed the state to prove an essential element of DUI by test results introduced through a witness other than the one who conducted the test. We disagree.

Initially, we note that the state used Corporal Gray's testimony to satisfy one of the six Sensing foundational requirements, not to establish an essential element of the offense. More importantly, the Tennessee Supreme Court has recognized that the TBI documents certifying the breath alcohol testing machines are public records under Tenn. R. Evid. 803(8). Sensing, 843

S.W.2d at 416. Public records are admissible "[u]nless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Tenn. R. Evid. 803(8). The record in this case contains no evidence that the certification documents were prepared in an untrustworthy manner. Moreover, although the public records exception does not even require that the record be introduced through the testimony of a "custodian or other qualified witness," State v. Baker, 842 S.W.2d 261, 264-65 (Tenn. Crim. App. 1992), Sensing contemplates that the state could introduce certification documents through the testimony of the officer who administered the breath test. Korsakov, slip op. at 8 (citing Sensing, 843 S.W.2d at 416)). Therefore, we conclude that it was not error to allow the breath alcohol machine's certification documents to be introduced through the testimony of a records keeper.

## VII. CONCLUSION

Based upon the foregoing and the record as a whole, we conclude that the trial court erred in finding the breath test operator unavailable and in allowing his videotaped former testimony. Because the breath alcohol test result should have been excluded, we reverse the judgment of conviction and remand the case for a new trial.

_____
JOSEPH M. TIPTON, JUDGE

-12-