# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 21, 2014 at Knoxville

## STATE OF TENNESSEE v. MARCUS PUCKETT

**Appeal from the Criminal Court for Shelby County**
**No. 11-05251      John W. Campbell, Judge**

**No. W2013-02556-CCA-R3-CD  - Filed November 20, 2014**

The Defendant, Marcus Puckett, was convicted by a jury of driving under the influence ("DUI") and DUI per se.  See Tenn. Code Ann. § 55-10-401.  The trial court merged the two charges, and the Defendant was sentenced to eleven months twenty-nine days, with all but seven days suspended, to be followed by supervised probation.  On appeal, the Defendant makes the following arguments: (1) that the trial court erred in denying his motion to suppress evidence of his blood-alcohol level based on an illegal search and seizure; (2) that the trial court erred in concluding that the State met its burden in proving compliance with State v. Sensing, 843 S.W.2d 412 (1992), and thus, should not have allowed the testing officer to testify regarding the results of his breath-alcohol test; and (3) that his constitutional rights were violated because the trial court failed to conduct a hearing pursuant to Momon v. State, 18 S.W.3d 152 (Tenn. 1999), following his decision not to testify at trial.  Following our review, we affirm the trial court's denial of the motion to suppress based on an illegal search and seizure.  We further hold that the trial court improperly concluded that the State complied with the Sensing requirements, and we therefore reverse the Defendant's conviction and remand to the trial court for proceedings consistent with this opinion. Finally, although we conclude that the trial court's failure to conduct a Momon hearing was plain error, we hold that such error does not necessitate further action from the trial court at this time because we have ordered a new trial on other grounds.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court**
**Affirmed in Part; Reversed in Part; and Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Claiborne Hambrick Ferguson, Memphis, Tennessee, for the appellant, Marcus Puckett.

Robert E. Cooper, Jr., Attorney General and Reporter; Caitlin Smith, Assistant Attorney

General; Amy P. Weirich, District Attorney General; and Michael R. McCusker, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

At trial, Officer Joshua Schultz testified that he was employed by the Germantown Police Department and that in November 2010, he was assigned as a task force officer with the Shelby County Sheriff's Office in the Metro DUI unit. Around 3:00 a.m. on the morning of November 28, 2010, Officer Schultz was driving north on Houston Levee Road in route to assist with a DUI stop in the northern part of Shelby County. While he was driving, he noticed a green Cadillac swerving in its lane, touching both lane lines, and stopping at a green light. Based on these initial observations, Officer Schultz turned on his dashboard camera and continued to follow and observe the vehicle. Officer Schultz watched the vehicle slow down and proceed halfway into a left turn lane before suddenly speeding up and continuing northbound on Houston Levee. The vehicle briefly crossed over the double yellow lines, and Officer Schultz became concerned that the driver might be either intoxicated or falling asleep.

Officer Schultz initiated a traffic stop. Officer Schultz approached the vehicle and knocked on the driver's side window, and the driver rolled down his window. At trial, Officer Schultz identified the Defendant as the driver of the vehicle. Officer Schultz noticed that there was glass on the dashboard, that the windshield was broken, and that there was blood on the steering wheel and dashboard. The Defendant was not wearing a shirt, and he was bleeding from his face. Officer Schultz could also see that there was a passenger in the vehicle, and at that point, he requested that the Defendant step out of the vehicle.

According to Officer Schultz, he smelled a "moderate odor of an intoxicant on [the Defendant]. . . . within the first . . . five to ten seconds of talking to [the Defendant]." He explained that, generally, "moderate" meant that you could smell the alcohol while standing within a few feet of a person and talking to them. At trial, Officer Schultz also recalled that the Defendant's eyes appeared "glassy, red-eyed, sleepy" and stated that the Defendant's speech was "[n]ot very coherent."

Officer Schultz had a short conversation with the Defendant outside the vehicle and then proceeded to handcuff the Defendant and place him in the back of his police cruiser. Officer Schultz testified that he took these actions because he was still trying to figure out exactly what had occurred in the car, and also because at that point he smelled alcohol and suspected that the Defendant was under the influence of an intoxicant.

-2-

Officer Schultz stated that he did not conduct any field sobriety tests because it was very cold outside and the Defendant was not wearing a shirt. Because the Defendant had blood on his person, Officer Schultz called an ambulance to the scene, and shortly thereafter paramedics arrived to check on the Defendant. The paramedics attended to the Defendant and cleaned up the blood on his face and hands, but it was determined that he did not require further medical assistance. He was then placed back in the police cruiser.

According to Officer Schultz, he read the Defendant the implied consent law, and the Defendant agreed to submit to a breath-alcohol test. Officer Schultz then entered the Defendant's information into the breathalyzer machine and began the twenty-minute observation period.[1] After the requisite observation period, the Defendant provided a breath sample, and according to the test results, the Defendant's blood-alcohol level was .205 percent.

Before trial, the Defendant filed a motion to suppress evidence of his breath-alcohol test, and the trial court held a hearing on the matter on March 9, 2012.[2] The Defendant argued that the officer did not have reasonable suspicion to stop the Defendant, that he did not have probable cause to arrest the Defendant, that he had failed to comply with the twenty-minute observation period required by Sensing, and that the officer did not provide the Defendant with Miranda warnings. At the hearing, Officer Schultz testified that he decided to pull the Defendant over after following him and observing him commit multiple traffic offenses. He further testified that he decided to place the Defendant in handcuffs in the back of his vehicle because he "smelled a strong odor of intoxicant . . . observed [the Defendant's] eyes were blood shot and watery, glassy, very confused, unintelligible speech." Also, because of the blood on the Defendant and the broken windshield, the officer was concerned that there might have been a domestic dispute between the Defendant and the passenger.

According to Officer Schultz, the Defendant was under arrest at the time he was placed in handcuffs. He testified that usually he gave Miranda rights when he handcuffed a suspect, but that he could not recall whether he did on this particular occasion.

Regarding the twenty-minute observation period, Officer Schultz testified that he was

_____

[1]Although Officer Schultz repeatedly refers to the observation period as being twenty-one minutes long, relevant authority refers to the period as being twenty minutes. Therefore, in the interest of consistency and clarity, we will refer to it as the twenty-minute observation period.

[2]The suppression issues were addressed by a different judge, The Honorable John T. Fowlkes, Jr. Judge Fowlkes conducted the suppression hearing and entered the subsequent order denying the motion in part and granting the motion in part.

not required to "stare" at the Defendant for the entire twenty minutes and that during that time, he "can be imputing things into the machine, or writing a note, or you know, reaching over to grab something out of [his] bag, or something like that." According to Officer Schultz, it was important to engage the subject in conversation during the observation period because it ensured that the person was "awake and talking, to know that there [was] nothing in their mouth and it [was] just a good way to pass twenty-one minutes as well." He stated that he did not observe the Defendant place anything in his mouth, burp, or regurgitate.

On cross-examination, the following exchange took place between trial counsel and Officer Schultz:

> Q: In the video that you watched yesterday, you can see yourself performing, I don't know if it is note taking, but you're clearly doing some paperwork during the twenty minute observation period?
>
> A: Yes sir.
>
> . . . .
>
> Q: [W]ere you taking notes from your field notes?
>
> A: I don't recall exactly what I was doing, but this,[3] sir, I would fill out, because this is what I would read, this is what we read, so this is already filled out before we read it. I fill this out and then I stop and read the rest of it sir.
>
> Q: Okay. Then what about the back part of it, where it has where you indicate what your observations were?
>
> A: I don't recall that this is what I was filling out sir. Normally, I would fill this out after everything was done.
>
> Q: But you just don't remember what it is that you're writing on and filling out during this period?
>
> A: No, sir.
>
> Q: Part of your training is, you've been trained not to do paperwork during the

---

[3]Although it is not apparent from this excerpt, it appears that the document Officer Schultz is referring to is the implied consent form, which had been previously marked as Exhibit 1 at the hearing.

observation period?

A: No, sir.

On April 17, 2012, the trial court made an oral ruling from the bench denying the Defendant's motion to suppress based on the claims of an illegal search and seizure and the Sensing violation. The trial court determined that based on the officer's testimony and the videotape of the Defendant's driving, there were "sufficient articulable facts that indicate a reasonable suspicion that driving under the influence was taking place." In ruling that the officer had probable cause to arrest the Defendant, the trial court focused on the officer's testimony that he could smell a strong odor of intoxicant. With regard to the Sensing violation, the trial court found that the State "met . . . and really exceeded" its burden in proving that the officer properly conducted the twenty-minute observation period. The trial court stated that it could "view the [D]efendant the entire time" on the videotape and that "[t]here was no way [the Defendant] put anything in his mouth." The trial court further found that the State had failed to carry its burden of proving that Miranda warnings were read at the time the Defendant was handcuffed. Therefore, the trial court excluded from evidence any statements made by the Defendant up until the time when he was provided with Miranda warnings.

## ANALYSIS

### I. Motion to Suppress

*A. Standard of Review*

A trial court's finding of fact on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Binette, 33 S.W.3d 215, 217 (Tenn. 2000). Likewise, questions of credibility, the weight and value of the evidence, and the resolution of conflicting evidence are matters entrusted to the trial court, and this court will not reverse the trial court's factual findings unless the evidence preponderates against them. Id. (citing State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996)). Both proof presented at the suppression hearing and proof presented at trial may be considered by an appellate court in deciding the propriety of the trial court's ruling on a motion to suppress. State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998). The evidence is to be viewed in the light most favorable to the prevailing party on a motion to suppress with all reasonable and legitimate inferences that may be drawn by the evidence. State v. Carter, 16 S.W.3d 762, 765 (Tenn. 2000). However, our review of the application of the law to the facts is de novo. State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998).

*B. Illegal Search and Seizure*

On appeal, the Defendant first argues that the officer lacked reasonable suspicion that he had committed or was about to commit a criminal offense at the time he initiated the traffic stop. The Defendant further argues that the officer lacked probable cause to arrest him for driving under the influence. The State responds that the Defendant committed several traffic violations, and that these violations, coupled with the fact that it was 3:30 a.m., support the officer's decision to initiate a traffic stop. Additionally, the State responds that the officer had probable cause to believe that the Defendant was intoxicated at the time he was placed under arrest. We agree with the State.

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect against unreasonable searches and seizures. Any warrantless search or seizure is presumed to be unreasonable and requires the State to prove by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement. State v. Simpson, 968, S.W.2d 776, 780 (Tenn. 1998). Two types of police-citizen encounters are considered seizures for constitutional analysis purposes: "(1) the full-scale arrest, which must be supported by probable cause; [and] (2) the brief investigatory detention, which must be supported by reasonable suspicion of wrong-doing[.]" State v. Day, 263 S.W.3d 891, 901 (Tenn. 2008) (citations omitted).

A police officer may make an investigatory stop based upon reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. Terry v. Ohio, 329 U.S. 1, 20-21 (1968); Binette, 33 S.W.3d at 218. Furthermore, a police officer must have such a reasonable suspicion in order to stop a vehicle without a warrant. State v. Randolph, 74 S.W.3d 330, 334 (Tenn. 2002). Our supreme court has stated that "when an officer turns on [his] blue lights," a stop has occurred. State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993). Reasonable suspicion is determined by an examination of the totality of the circumstances. Binette, 33 S.W.3d at 218. Circumstances relevant to an analysis of reasonable suspicion include "the officer's personal objective observations . . . [and any] [r]ational inferences and deductions that a trained officer may draw from the facts and circumstances known to him." State v. Yeargan, 958 S.W.2d 626, 632 (Tenn. 1997).

In Day, the Tennessee Supreme Court explained the concept of probable cause as follows:

> "Probable cause"—the higher standard necessary to make a full-scale arrest—means more than bare suspicion: "Probable cause exists where 'the facts and circumstances within [the officers'] knowledge, and of which they

had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175-76 (1949) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)). "This determination depends upon 'whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" Goines v. State, 572 S.W.2d 644, 647 (Tenn. 1978) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).

263 S.W.3d at 902.

Viewing the evidence in the light most favorable to the State, Officer Schultz testified that he first noticed the Defendant's car when it stopped at a green light before proceeding through the intersection. Officer Schultz reported that the vehicle moved back and forth within its lane, touching the lane dividers several times, before slowing down and straddling the white line of a turn lane. The Defendant's vehicle then sped up and briefly crossed the double-yellow lines. Officer Schultz testified that because it was 3:30 a.m., he was worried that the driver was either driving under the influence or falling asleep. Based on these facts, we conclude that the evidence does not preponderate against the trial court's findings that this evidence was sufficient to support a reasonable suspicion to stop the Defendant's vehicle.

Furthermore, Officer Schultz testified that within five to ten seconds of initially encountering the Defendant he suspected that the Defendant was driving under the influence of an intoxicant. Although the Defendant relies upon State v. Berrios, 235 S.W.3d 99 (Tenn. 2007), in support of his argument that he was subjected to an illegal "sit and frisk," we agree with the State that the facts in Berrios are "clearly distinguishable" from the present case. In Berrios, the officer stopped the defendant for speeding, had no reason to suspect that any other criminal activity had taken place, and admitted that he placed the defendant in his patrol vehicle to see if he became anxious. Id. at 102. In the present case, the officer testified that he smelled a strong odor of intoxicant almost immediately upon talking to Defendant, that the Defendant's eyes were glassy and blood-shot, and that his speech was slurred and unintelligible. Such evidence does not preponderate against the trial court's finding that the officer had probable cause to arrest the Defendant.

### C. Breath-alcohol Test as Illegal Search and Seizure

Finally, the Defendant contends that the breath-alcohol test given to him was an

unconstitutional search and seizure. In particular, the Defendant asserts that the officer lacked probable cause to believe evidence of his intoxication would be found if a breath-alcohol test was conducted. The Defendant further argues that application of the exigent circumstances exception to blood-alcohol testing should be reexamined in light of the Supreme Court's recent decision in Missouri v. McNeely, 133 S. Ct. 1552 (2013). The State responds that the officer did have probable cause to suspect that a breath-alcohol test would result in a finding that the Defendant was intoxicated and further responds that the Defendant consented to the test.

Initially, we note that "[t]he administration of a breath test for the detection of a person's blood-alcohol level is a seizure of the person and a search for evidence within the purview of the Fourth Amendment of the United States Constitution." State v. Humphreys, 70 S.W.3d 752, 760 (Tenn. Crim. App. 2001) (citing State v. Michael A. Janosky, No. M1999-02574-CCA-R3-CD WL 1449367 (Tenn. Crim. App. Sept. 29, 2000)). Therefore, any breath-alcohol test conducted without a warrant must fall under one of the exceptions to the warrant requirement. Humphreys, 70 S.W.3d at 760.

Although the Defendant urges us to analyze his case under the exigent circumstances exception to the warrant requirement, we find such analysis unnecessary. The Defendant does not dispute that he provided consent to the breath-alcohol test, and, therefore, whether exigent circumstances did or did not exist is immaterial.

Consent is a well-established exception to the warrant requirement. See Schneckloth v. Bustamonte, 412 U.S. 218 (1973); Rippy v. State, 550 S.W.2d 636 (Tenn. 1977). "The sufficiency of the consent depends largely upon the facts and circumstances presented by each particular case. The burden is on the prosecution to prove that the consent was given freely and voluntarily." State v. Blackwood, 713 S.W.2d 677, 680 (Tenn. Crim. App. 1986). Also relevant to this discussion is Tennessee's implied consent law, codified at Tennessee Code Annotated section 55-10-406(a)(1), which provides as follows:

> Any person who drives a motor vehicle in this state is deemed to have given consent to a test or tests for the purpose of determining the alcoholic content of that person's blood, a test or tests for the purpose of determining the drug content of the person's blood, or both tests.

A test conducted pursuant to Tennessee Code Annotated section 55-10-406(a)(1) requires that the law enforcement officer have "reasonable grounds to believe the person was driving while under the influence of alcohol."

Although the Defendant argues that the officer lacked the probable cause required to justify a breath-alcohol test under both the exigent circumstances and consent requirements, the Defendant's argument is misguided. As discussed above, the exigent circumstances exception is immaterial, and the implied consent law requires only "reasonable grounds to believe the person was driving under the influence of alcohol." Tenn. Code. Ann. § 55-10-406(a)(1). In the present case, the officer testified that he had multiple grounds for believing the Defendant was intoxicated. Furthermore, the Defendant can be heard on the videotape from the dashboard camera saying "test me; I will pass with flying colors," and the officer read the Defendant the implied consent form before administering the breath test. The Defendant does not challenge the adequacy of the consent he provided. Because we conclude that the officer did have reasonable grounds to believe the Defendant was intoxicated, the Defendant's argument that the breath-alcohol test constituted an illegal search and seizure is without merit.

## D. *Sensing Violation*

The Defendant contends that the fourth Sensing requirement was not met because Officer Schultz was filling out paperwork during the twenty-minute observation period and therefore failed to properly observe him. The State responds that the officer engaged the Defendant in conversation during the entire twenty-minute period and ensured that the Defendant did not have anything in his mouth, thus complying with Sensing.

In Sensing, our supreme court relaxed the requirements for introducing the results of breath-alcohol tests into evidence. 843 S.W.2d 412. The court set forth new requirements that must be followed when the State seeks to admit the results of these tests from a non-qualified expert, such as the testing officer. The court determined that, because the reliability of such testing had become generally accepted, there was no longer a need for a certified operator of a breathalyzer "to know the scientific technology involved in the function of the machine." Id. at 416. Instead, the court held that before evidence of breath-alcohol results are introduced, the testing officer must be able to testify:

> (1) that the tests were performed in accordance with the standards and operating procedure promulgated by the forensic services division of the Tennessee Bureau of Investigation, (2) that he was properly certified in accordance with those standards, (3) that the evidentiary breath testing instrument used was certified by the forensic services division, was tested regularly for accuracy and was working properly when the breath test was performed, (4) that the motorist was observed for the requisite 20 minutes prior to the test, and during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke, or regurgitate, (5) evidence

-9-

that he followed the prescribed operational procedure, [and] (6) identify the printout record offered in evidence as the result of the test given to the person tested.

Id.

Because Sensing lowered the standard for admissibility of breath-alcohol tests, our supreme court has declined to further relax the now well-established foundational requirements for admitting such evidence. See State v. Bobo, 909 S.W.2d 788, 790 (Tenn. 1995) (explaining that Sensing created "unambiguous threshold admissibility requirements" for the introduction of breath-alcohol testing results from a non-expert ); see also State v. Deloit, 964 S.W.2d 909, 914 (Tenn. Crim. App. 1997) (noting that Bobo held that "once the state decides to proceed under Sensing, which relaxed traditional requirements of admissibility, there can be no further relaxation of the rules"). The State carries the burden of proving that the breath test complied with the Sensing requirements. State v. McCaslin, 894 S.W.2d 310, 312 (Tenn. Crim. App. 1994). On appeal, there is a presumption that the trial court's determination of the Sensing requirements is correct unless the evidence preponderates otherwise. State v. Edison, 9 S.W.3d 75, 78 (Tenn. 1999).

The fourth Sensing requirement requires the State to prove two distinct elements: (1) that the defendant was observed for twenty minutes and (2) that the defendant did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke, or regurgitate. 843 S.W.2d at 416 (emphasis added). This court has previously held that while "an unblinking gaze for twenty minutes is not required. . . . the officer must be watching the defendant rather than performing other tasks." State v. Korsakov, 34 S.W.3d 534, 540 (Tenn. Crim. App. 2000). In Korsakov, the officer administering the breath-alcohol test filled out paperwork during the observation period. Id. at 539. The officer testified that, while standing across a counter from the defendant, he was able to observe the defendant through his peripheral vision, and also "affirmed that the defendant did not eat, drink, smoke, vomit, or belch during this time." Id. The court determined that although the officer was confident that he would have heard or smelled any of the activities that might have affected the results of the breath test, this "belief" did not satisfy the prerequisite that the defendant be observed for twenty minutes. Id. at 541.

In Deloit, this court held that the results of a breath-alcohol test were not admissible where the officer observed the defendant in his rear view mirror while he filled out paperwork. 964 S.W.2d at 916. Likewise, in State v. Sean E. Miller, because the officer admitted that he was completing paperwork and talking to other officers during the observation period, the court held that he could not conclusively verify that the defendant did not burp, belch, regurgitate, or put anything in his mouth. No. W2001-02045-CCA-R3-CD,

2002 WL 1483197, at *1 (Tenn. Crim. App. Feb. 15, 2002). The court stated that although there was a videotape of the defendant while he was in the backseat of the patrol car, his face was not observable for the entire twenty-minute period. Id. at *3 n.1. Therefore, although "an appellate court's standard of review is de novo with no presumption of correctness where evidence does not involve issues of credibility," the court could not make an independent determination that the fourth Sensing requirement had been met. Id. (citing Binette, 22 S.W.3d at 217).

In its brief, the State relies upon State v. Stanley E. Chatman, No. M2002-02418-CCA-R3-CD, 2003 WL 22999438 (Tenn. Crim. App. Dec. 23, 2003), to support the proposition that an officer may look away from the defendant "for a second" to check his watch without invalidating the entire observation period. However, Chatman is readily distinguishable from the case at hand. In Chatman, the officer testified that he observed the defendant "face to face" for over twenty minutes and "glanced at his stopwatch" once or twice during the observation period. Id. at *4. He further testified that he did not fill out any paperwork or make any radio calls during this time. Id. Initially, in the present case, it is important to note that the Defendant was in the backseat of the patrol car; hence,the officer was not observing the Defendant face to face at any time. In fact, by his own admission, the officer filled out paperwork during the observation period. Additionally, a careful review of the videotape shows that at various times during the observation period, the officer accepts a clipboard from someone outside his patrol car, which he writes on and then hands back, takes a piece of paper from someone outside the patrol car, which he appears to place on his clipboard, and briefly converses with someone outside the patrol car. We fail to see how these actions are analogous to a mere "glance" at one's stopwatch.

In denying the motion to suppress, the trial court relied heavily upon its own review of the videotape in determining that the Defendant did not burp, belch, regurgitate, or place anything in his mouth. The trial court noted that the officer was in close proximity to the Defendant the entire time and agreed with the State that "[one-hundred] percent watching of the defendant is not required." We acknowledge that during the time period when the Defendant's face is viewable on the videotape, he does not appear to engage in any prohibited activities. We further acknowledge that it would have been nearly impossible for him to place anything in his mouth because he was handcuffed the entire time. However, the Defendant's face, and in particular his mouth, is not visible during the entire twenty-minute period. At several points throughout the videotape, the Defendant's face and mouth are obstructed by what appears to be the keyboard for the Intoximeter. Burping, belching, and regurgitating can occur in a matter of seconds, and "while 'often a belch or regurgitation will produce a noise capable of being heard by another person, this is not always the case.'" Korsakov, 34 S.W.3d at 541 (quoting State v. Harold E. Fields, No. 01C01-9412-CC-00438, 1996 WL 180706, at *3 (Tenn. Crim. App. Apr. 12, 1996). Our own review of the videotape,

taken together with the officer's testimony that he did paperwork during the observation period, leads us to conclude that the evidence preponderates against the trial court's finding that the officer complied with the requisite twenty-minute observation period. Therefore, we hold that the trial court erred in admitting the breath-alcohol test results into evidence.

The results of the breath-alcohol test were the only evidence establishing DUI per se and were the only scientific evidence offered by the State in support of the DUI charge. Although the officer testified that the Defendant drove somewhat erratically, smelled of alcohol, and appeared intoxicated, we cannot say that without admission of the .20 breath-alcohol test results, the jury would have found that the Defendant was guilty beyond a reasonable doubt. See Miller, 2002 WL1483197, at *3. Because we conclude that the admission of the test results was not harmless error, we reverse and remand for a new trial.

## II. Momon Violation

Finally, the Defendant contends that the trial court erred in failing to conduct a Momon hearing in violation of his fundamental constitutional rights. The State responds that the Defendant has waived review of this issue because he failed to raise the issue in his motion for a new trial.

Tennessee Rule of Appellate Procedure 3(e) states that "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." However, this court has previously held that "the failure to conduct a hearing pursuant to Momon to determine whether the [d]efendant did personally waive his right to testify was plain error." State v. Roger Page, No. W2003-01342-CCA-R3-CD, 2004 WL 3352994, at *16 (Aug. 26, 2004 Tenn. Crim. App.) (citing State v. Posey, 99 S.W.3d 141, 148 (Tenn. Crim. App. 2002)). Therefore, the fact that the Defendant failed to raise this issue in his motion for a new trial does not preclude review of the issue for purposes of determining the presence of plain error. See Tenn. R. Crim. P. 32(b).

In Momon, our supreme court recognized that "the right of a criminal defendant to testify in his or her own behalf is a fundamental constitutional right." 18 S.W.3d at 161. The court also recognized the ability of a defendant to waive this right. Accordingly, the court established a procedure for questioning the defendant regarding this decision at his trial designed to "protect the fundamental right of the accused to testify in a criminal trial and to ensure that any waiver of that right was personal, knowing, and voluntary." State v. Copeland, 226 S.W.3d 287, 304 (Tenn. 2007).

In the present case, the record is devoid of any evidence that the trial court followed the waiver procedure set forth in <u>Momon</u>. Usually, the proper remedy for such a complete failure would be to "remand the case to the trial court for a determination of whether the defendant personally waived his right to testify." <u>Page</u>, 2004 WL 3352994, at *16 (citing <u>Posey</u>, 99 S.W.3d at 149). However, because we have already concluded that the Defendant's case should be reversed and remanded based on the <u>Sensing</u> issue, it is unnecessary to remand the case to the trial court for determination of whether the Defendant properly waived his right to testify. Instead, we impress upon the trial court the importance of conducting a <u>Momon</u> hearing should the Defendant again decide not to testify.

CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is reversed.

_____
D. KELLY THOMAS, JR., JUDGE